MARCOS TOMÁS CANEJA ET AL., Appellants, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, and RAMÓN MONTANER, MANAGER OF THE STATE INSURANCE FUND, Respondents; HEIRS OF FLOR CARRILLO, Claimants.

No. 229. Argued December 1, 1941.—Decided February 4, 1942.

*Dubón & Ochoteco* and *Otero Suro & Otero Suro* for appellants.
*Ernesto Juan Fonfrías* for the heirs of the deceased workman.

Mr. Justice De Jesús delivered the opinion of the court.

Flor Carrillo died on May 2, 1940, on being overwhelmed by a landslide in a quarry in which he was working and which belonged to Marcos Tomás Caneja but was operated at the time by the latter's son Marcos Tomás Piñán. On May 16, the children and the mother of the deceased workman, represented by Attorney Fonfrías, filed with the Industrial Commission a petition, requesting that an investigation be made in order to ascertain whether the employer was insured under the Workmen's Compensation Act and, if so, that they be compensated accordingly. In said petition the employer was designated by the name of "Marcos Caneja." As a result of the investigation made by the Industrial Commission, the Assistant Manager of the State Insurance Fund reported that said employer Marcos Caneja "was not insured, in violation of the law." Proper proceedings were taken before the Industrial Commission of Puerto Rico, and on October 29, 1940, a public hearing was held which was attended by the children and the mother of the workman, represented by Attorney Fonfrías; by Marcos Tomás Caneja, represented by Attorney Luis E. Dubón; and by Marcos Tomás Piñán in person. On January 26, 1941, the public hearing was resumed, and on the 25th of the following August a decision was rendered in favor of the heirs of the workman, directing the Manager of the State Fund to determine the proper compensation, together with the disbursements provided for in section 15 of said act. Said decision contained the following findings of fact:

"That Flor Carrillo was a workman employed by Marcos Tomás Piñán on May 2, 1940.

"2. That Flor Carrillo met with an accident which arose from an act or function inherent in his work and occurred in the course and as a consequence thereof, and which caused his death.

"3. That Marcos Tomán Piñán, the employer, was not insured, as required by Act No. 45 of April 18, 1935, he employing more than four workmen.

"4. That Marcos Tomás Piñán was a sort of independent contractor who operated the quarries of his father Marcos Tomás Caneja, and that neither of them was insured conformable to the provisions of Act No. 45 of April 18, 1935, for which reason the property owned by Marcos Tomás Caneja is answerable in this case for the compensation and disbursements involved.

"5. That Eusebia Carrillo, mother of the deceased, and Flor Carrillo's children, Guillermina, Georgina, and Cándido Carrillo, entirely depended for their support on the earnings of Flor Carrillo at the time of his death, and they are entitled to the compensation provided for by Act No. 45 of April 18, 1935."

Marcos Tomás Caneja and Marcos Tomás Piñán moved for a reconsideration, but their motion was denied by an order of September 9, 1941, whereupon they instituted the present proceeding for review in which they assign the following five errors:

"1. The Industrial Commission of Puerto Rico erred in holding that between Marcos Tomás Caneja and Marcos Tomás Piñán there existed the relation of employer and independent contractor.

"2. The Industrial Commission of Puerto Rico erred in holding that Flor Carrillo was working for Marcos Tomás Piñán at the time of the accident.

"3. The Industrial Commission of Puerto Rico erred in holding that it appeared from the evidence heard that the workman's mother, Eusebia Carrillo, and his children Guillermo, Georgina, and Cándido Carrillo were entirely dependent for their support on the earnings of Flor Carrillo.

"4. The Industrial Commission of Puerto Rico erred in holding that the testimony of Luis San Martín was inadmissible in evidence, and hence it erred in not taking the same into consideration in deciding this case.

"5. The Industrial Commission of Puerto Rico erred in holding that the properties owned by Marcos Tomás Caneja and by Marcos Tomás Piñán, appellants herein, are liable for compensation and and disbursements in this case."

 Regarding the first assignment, we can definitely say that there is no evidence whatever tending to show that between Marcos Tomás Caneja and Marcos Tomás Piñán there existed any other relation than that of lessor and les-

see. The only evidence on this particular is the testimony of Marcos Tomás Piñán, who testified that he was operating the quarry in question on a lease contract from his father Marcos Tomás Caneja. His testimony was not controverted in any way and he was not even cross-examined on said particular. This being so, it is obvious that Marcos Tomás Caneja, the lessor, as the owner of the quarry, is not liable for the accident sustained by a workman employed by the lessee who operated said quarry.

Besides, it appears from the record of the public hearing held on January 14, 1941, that the heirs of the workman, through their counsel, Attorney Fonfrías, admitted that the party liable for the death of the workman was Marcos Tomás Piñán and not the latter's father Marcos Tomás Caneja. We copy from the transcript of record:

"Attorney Fonfrías: . . . It is alleged by the heirs of Flor Carrillo that Marcos Tomás Piñán, who operates and conducts the quarries owned by his father Marcos Tomás Caneja, is the party liable for the death of said workman.

"Attorney Dubón: I did not hear the last statement of my colleague.

"Attorney Fonfrías: Let the stenographer read it out . . . (The last statements made by Attorney Fonfrías are read out)

"Attorney Dubón: Who is the party liable? I want that to be made clear on the record. Who is claimed to be liable, Marcos Tomás Piñán? That is what I want to have made clear.

"Attorney Fonfrías: '. . .that Marcos Tomás Piñán, who operates and conducts the quarries owned by his father Marcos Tomás Caneja, is the party liable.'

"Attorney Dubón: Then, it is Marcos Tomás Piñán?

"Attorney Fonfrías: Yes."

Let us take up the second assignment. As appears from the evidence, Flor Carrillo had been for some time working for Marcos Tomás Piñán in said quarry. On the day of the accident the workman was working therein and died as the result of the injuries sustained by him when caught by a landslide.

According to the evidence, the stone quarried by the workmen was loaded on trucks which carried it to a destination not apparent from the evidence, and on receipt of the stone the chauffeur of the truck handed to the workman, whose stone he had taken, a voucher showing the amount of stone delivered. The workman kept all such vouchers and on each Saturday he presented them to Marcos Tomás Piñán, who paid him for the stone delivered on the trucks at the rate of $0.35 per cubic meter. It also appears from the evidence that the workman worked with such tools and explosives as were gratuitously furnished by Marcos Tomás Piñán.

It is maintained by the appellants that, as regards the lessee, the workman was not his employee but an independent contractor, and they produced evidence tending to show that occasionally the workman sold the stone directly to the drivers, who used to come for it, and was handed by the latter vouchers instead of cash for the amount sold, which vouchers were cashed by Marcos Tomás Piñán on each Saturday after deducting from the total thereof the $0.15 which, as alleged by the appellants, was the amount collected by them as quarry dues.

That evidence was contradicted by witnesses for the workman's heirs and, as the commission gave credence to their testimony, we can not disturb the finding thus made, since such finding is supported by the evidence.

The fact that the workmen were not paid daily wages for their work but were paid according to the amount of stone quarried by them did not convert such workmen into independent contractors as regards the operator of the quarry. In this connection see Bradbury's Workmen's Compensation, 3d ed., p. 143, and cases cited therein; *Washburn* v. *Bunce*, 4 N. E. (2d) 730; *Burchett* v. *Department of Labor & Industries*, 261 P. 802.

The third error assigned does exist. No evidence was introduced tending to show that the mother and the children of the workman in any way depended on him for

their support. Since the Workmen's Compensation Act is a law of dependency and not of inheritance, as repeatedly stated by this court, the heirs of the workman would not be entitled to compensation for his death unless this particular were proved, and the burden of proving it was upon them.

It was not error for the Industrial Commission to refuse to admit in evidence the testimony of Luis San Martín to the effect that several days prior to the accident which resulted in the death of Flor Carrillo, the latter had told the witness that Marcos Tomás Piñán had forbidden him to continue working on the quarry. Such evidence was inadmissible, in the first place, because it was not a part of the *res gestae*, as it had no relation to the cause of the accident or the manner of its occurrence; and, in the second place, because it did not constitute an admission, inasmuch as the right to compensation sought to be enforced by the mother and the children of the workman is not a right which the former inherited or derived from the latter. In other words, it is not a right which belonged to the workmen and which he transmitted to them. Such right is granted by law directly to the beneficiaries by reason of their dependence on the workman for their support. Therefore, any statement of the workman which might prejudice his beneficiaries is not admissible in evidence, unless, as we have already stated, it forms part of the *res gestae*. See in this connection the application of this rule which appears in the monograph published in 11 L.R.A. (N.S.) 92.

The fifth assignment is disposed of by what we have said when considering the previous ones. As we have held that Marcos Tomás Caneja is not liable for the workman's death, it clearly follows that his property does not answer for the accident. On the other hand, that of Marcos Caneja Piñán does answer, as he is not an insured employer, for it was shown that he employed more than four workmen and was not insured with the State Insurance Fund.

■ In view of the authority almost tutelary conferred on the Industrial Commission for the investigation and disposition of the cases before it, and regard being had for the spirit of the Workmen's Compensation Act, which requires a liberal construction for the attainment of the beneficent purposes of its enactment, we would be contributing to an actual miscarriage of justice if, owing to the fact that through inadvertence or error counsel for the beneficiaries failed to produce evidence tending to show that the latter depended upon the workman for their support, we should deprive them of the compensation to which they are lawfully entitled if such dependency actually exists. The employer would not be deprived of any substantial right by our remanding the case to the Industrial Commission with directions to admit evidence on this point in the furtherance of justice. If as the result thereof it should be shown that the workman's heirs were not dependent on him for their support, let the employer then be released from liability; but if, on the other hand, it should turn out that they were actually dependent on the workman for their maintenance, full justice will be done by acknowledging their rights to the statutory compensation.

For the reasons stated the decision of the Industrial Commission must be reversed as regards Marcos Tomás Caneja and set aside as to Marcos Tomás Piñán, and the case remanded to the Industrial Commission with instructions to admit evidence regarding any dependence relationship that might exist between the workman and his heirs, and then to enter the proper decision in accordance with the law and the evidence produced.

Mr. Justice Snyder took no part in the decision of this case.